

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

bd.

GERALD C. MANN
ATTORNEY GENERAL

Honorable George H. Sheppard
Comptroller of Public Accounts
Austin, Texas

Dear Sir:

Opinion No. 0-5355
Re: Liability of a contract
carrier, holding a per-
mit issued by the Rail-
road Commission of Texas
under Art. 911b, V.A.C.S.,
for occupation tax imposed
by H. B. No. 8, Article XIV,
Acts 47th Leg., Regular
Session.

We received your letter dated May 26, 1943 re-
questing our opinion on the above captioned subject. Said
letter reads in part as follows:

"Article 14 of House Bill No. 8 of the
Forty-seventh Legislature provides for a tax
of 2.2% on gross receipts earned by contract
motor carriers, as defined in Chapter 277,
Acts of the Regular Session of the Forty-sec-
ond Legislature.

"Mr. A. W. Dunn, doing business as A. W.
Dunn Transfer Company, Marshall, Texas, operates
under a contract motor carrier's permit, No.
11,092. This concern is under a contract with
John Morrell & Company, Ottumwa, Iowa, to deliver
their meat products to customers in Marshall and
adjacent territory.

Honorable George H. Sheppard, Page 2

"It is my understanding that John Morrell
& Company prepare shipments of meat products
marking same to the individual customer and
placing the shipments in the said car destined
for Marshall, Texas. These shipments for in-
dividual customers are marked in care of A. W.
Dunn Transfer Company. The A. F. Dunn Transfer
Company opens the car and makes deliveries of
the shipments to each of the customers to whom
the meat products are marked.

". . . .

"I will appreciate it if you will give me
your opinion as to the tax liability of A. W.
Dunn Transfer Company in this matter."

We understand that Morrell & Company issues its
bill of leding direct to its customers in the Marshall area
and ships the merchandise in care of A. F. Dunn Transfer
Company with instructions to deliver the merchandise in ac-
cordance with the bills of leding.

An inspection of the files of the Railroad Commis-
sion reveals that the A. F. Dunn Transfer Company has a con-
tract carrier's permit to transport the merchandise in question.
Nothing in the permit indicates that the transportation in
question is interstate commerce. To the contrary, it appears
that the Railroad Commission treated it as intrastate commerce.
We have been recently advised that the A. F. Dunn Transfer Com-
pany holds certificate No. 14,612 from the Interstate Commerce
Commission to transport the very merchandise in question. We
are further advised that the Interstate Commerce Commission has
approved the rates for this transportation.

There is no question but what a through shipment of
the particular merchandise in question was intended when said
merchandise was shipped by the shipper to the purchaser thereof.
A number of decisions of the Supreme Court of the United States,
typified by the case of Baltimore and O. S. W. R. Co. v. Settle,
260 U. S. 166, are to the effect that the shipments in question

are in interstate commerce. Having determined that the transportation in question is interstate commerce, we look to see whether or not the gross receipts derived therefrom are to be included in computing the tax due.

Article 14, Section 1(a), H. B. No. 8, Acts 47th Leg., Regular Session, imposes the following tax:

"Section 1. (a) Each individual, partnership, company, association, or corporation doing business as a 'motor bus company' as defined in Chapter 270, Acts Regular Session of the Fortieth Legislature, as amended by the Acts of 1929, First Called Session of the Forty-first Legislature, Chapter 78, or as 'motor carrier' or 'contract carrier' as defined in Chapter 277, Acts Regular Session of the Forty-second Legislature, over and by use of the public highways of this State, shall make quarterly on the first day of January, April, July, and October of each year, a report to the Comptroller, under oath, of the individual, partnership, company, association, or corporation by its president, treasurer, or secretary, showing the gross amount received from intrastate business done within this State in the payment of charges for transporting persons for compensation and any freight or commodity for hire, or from other sources of revenue received from intrastate business within this State during the quarter next preceding. Said individual, partnership, company, association, or corporation at the time of making said report, shall pay to the State Treasurer an occupation tax for the quarter beginning on said date equal to two and two tenths (2.2) per cent of said gross receipts, as shown by said report. Provided, however, carriers of persons or property who are required to pay an intangible assets tax under the laws of this State, are hereby exempted from the provisions of this Article of this Act."

In order to clarify the scope and meaning of the above Section, the same Legislature enacted H. B. No. 1059 which provides as follows:

Honorable George H. Sheppard, Page 4

"Section 1. The term 'intrastate business' as used in Article XIV. Section 1 (a) of House Bill No. 8, Acts of the Regular Session of the Forty-seventh Legislature shall mean and apply only to that portion of revenues derived from transportation subject to the regulation of the Railroad Commission of Texas."

By the express terms of H. B. No. 8, supra, the tax is imposed on each individual, partnership, company, association or corporation doing business as a contract carrier as defined in Chapter 277, Acts 42nd Leg., Regular Session. The definitions referred to are as follows (codified in Section 1, sub-sections (g) and (h), of Article 911b, V. A. C. S.);

"(g) The term 'motor carrier' means any person, firm, corporation, company, co-partnership, association or joint stock association, and their lessees, receivers or trustees appointed by any Court whatsoever owning, controlling, managing, operating or causing to be operated any motor-propelled vehicle used in transporting property for compensation or hire over any public highway in this State, where in the course of such transportation a highway between two or more incorporated cities, towns or villages is traversed; provided, that the term 'motor carrier' as used in this Act shall not include, and this Act shall not apply to motor vehicles operated exclusively within the incorporated limits of cities or towns.

"(h) The term 'contract carrier' means any motor carrier as hereinabove defined transporting property for compensation or hire over any highway in this State other than as a common carrier. As amended Acts 1931, 42nd Leg., p. 480, ch. 277, § 1. "

In examining House Bill No. 8, supra, it is apparent that the Legislature intended that the tax in question should be computed on intrastate gross receipts alone. However, it clearly appears from said Act that intrastate receipts from

Honorable George W. Sheppard, Page 5

sources other than the actual transportation were to be included in computing the tax. A few weeks after the passage of the above mentioned Act, the same Legislature enacted House Bill No. 1039 which provided in effect that only the receipts from the actual transportation of merchandise were to be considered in computing the tax. However, the language of said bill defines intrastate business as that transportation subject to the regulation of the Railroad Commission.

It is well settled that the Railroad Commission has the power to regulate interstate motor carriers insofar as road preservation and public safety are concerned. See Railroad Commission vs. Southwestern Greyhound Lines, 92 S. W. (2d) 296, reversed by Supreme Court on other grounds, 99 S. W. (2d) 263. We do not believe that this is the type of regulation which the Legislature had in mind when enacting House Bill No. 1039.

We do not believe that the Legislature, in passing House Bill No. 1039 intended that interstate receipts should be included in computing the tax due. To the contrary, we believe that the only purpose of House Bill No. 1039 was to limit the application of House Bill No. 8 to the gross receipts derived from that intrastate transportation subject to the regulation of the Railroad Commission.

From the facts given us, we are of the opinion that the gross receipts received by the A. W. Dunn Transfer Company for the transportation of the merchandise in question cannot be included in computing the tax imposed by Article XIV of House Bill No. 8, supra.

Yours very truly

ATTORNEY GENERAL OF TEXAS

APPROVED JUL 23, 194.

ASSISTANT
ATTORNEY GENERAL

By _____

Lee Shoptaw
Assistant

LS:fo

APPROVED
OPINION
COMMITTEE
BY BWB
CHAIRMAN